MARITIME INV. CO. v. HANOS.†

(Circuit Court of Appeals, Ninth Circuit. February 6, 1911.)

No. 1,894.

1. SEAMEN (§ 29*)—PERSONAL INJURIES—DEFECTIVE MACHINERY.
    The findings of an admiralty court that the explosion of a boiler tube on respondent's steam schooner, by which libelant was injured, was caused by overheating, due to the accumulation of scale or other substance therein which obstructed the flow of water, and that the officers of the vessel were negligent in failing to inspect or repair the tube, affirmed.
    [Ed. Note.—For other cases, see Seamen, Dec. Dig. § 29.*]

2. SEAMEN (§ 29*)—PERSONAL INJURIES—PLEADING—SUFFICIENCY OF LIBEL.
    A libel in a suit to recover damages for an injury to libelant, caused by the bursting of a boiler tube in respondent's vessel, which alleges that the boiler was in "an unsafe, dangerous, and defective condition," is sufficiently specific.
    [Ed. Note.—For other cases, see Seamen, Dec. Dig. § 29.*]

Appeal from the District Court of the United States for the Northern District of California.

Suit in admiralty by Basilios Hanos against the Maritime Investment Company, as owner of the steam schooner F. A. Kilburn. Decree for libelant, and respondent appeals. Affirmed.

Samuel Rosenheim, H. W. Hutton, and Bernard Silverstein, for appellant.

Henry B. Lister and Franklin P. Bull, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HANFORD, District Judge.

ROSS, Circuit Judge. The appellee was libelant in the court below, where he brought the libel against the Maritime Investment Company, claimant of the steam schooner F. A. Kilburn (appellant here), to recover damages for personal injuries sustained by him by the bursting of a water tube in one of the boilers of the schooner, and the consequent escape of steam, resulting in the almost total destruction of the use of his hands. The libelant was at the time employed as one of the firemen of the schooner. The tube that burst was in the afterboiler, and the ground for recovery of damages was the alleged neglect of the owner and officers of the boat to keep its water tubes in proper condition.

That the tube that burst and caused the libelant's injury was overheated clearly appears from the evidence, one of the claimant's own witnesses stating that the tube itself showed that it was overheated; and it was so found in effect by the trial court, which further found that the overheating was caused by the accumulation of scale or some similar substance in the pipe, whereby the circulation of the water therein was impeded, resulting in the reducing of its thickness by burning to the bursting point, and that the officers in

charge of the schooner were negligent, either in failing to make such inspection as would disclose the existence of the deposit, or to take proper steps to remove it if discovered.

It is urged on behalf of the appellant that the findings of the court were not justified by the evidence, but that, on the contrary, the proof is uncontradicted to the effect that the libelant's injuries were caused by a latent defect in the pipe.

We do not so read the record. It is true that the witness Bulger, who was a government boiler inspector, said that in his opinion the bursting of the tube was caused by a latent defect; but a careful examination of the evidence satisfies us that the trial judge was right in his conclusion that Bulger's opinion was not well-founded, even if read only in connection with the balance of his own testimony. The case shows that there were two boilers in the schooner, each of which contained 16 4-inch and more than 300 2-inch tubes. There was evidence other than Bulger's given on the part of the appellant tending, to a greater or less degree, to sustain the claim of the appellant that the bursting of the tube was caused by a latent defect in the iron. For example, the witness Grundell, who was a marine engineer in the employ of the makers of the boiler in question, and whose business it was to install and repair such boilers, was questioned and answered as follows:

"Q. Mr. Grundell, you have examined these tubes, have you not? A. I have seen that tube when it was taken out, when it arrived in port on that trip. Q. After the accident? A. Yes, sir. Q. At the office of the inspector? A. No, sir; aboard the ship. Q. Did you form an opinion as to whether it was caused by a patent or latent defect? A. I should say latent. Q. And what do you mean by latent defect? A. That the iron in manufacturing some way became defective. Q. That happens at times in these constructions? A. That is the first to (in) my experience that anything happened like that."

This witness also testified that he considered that about once a month was often enough to inspect the tubes, and this the witness gave as the proper method to examine the tubes of such boilers:

"Take a plate off either end. You can hold a candle and look right through them. In straight tubes you can look right through them. They are all straight tubes, only nine feet long, and you can readily see any obstruction in them. There are plates on both ends. When a tube is defective, that is, where I have to take a tube out, or examine the boiler for defects, I usually find them on the ends where they have been rotted, or, if there is any pitting, I find that with a scraper; it is readily detected. You can see through all of the tubes by taking the plate off opposite either end. They are in clusters of four. You can see through four by holding the candle on the opposite side."

On behalf of the libelant, the exploded tube was put in evidence as an exhibit, which showed that it had been overheated and burned from some cause, and there was testimony tending to show that the cause was neglect on the part of those in charge of the schooner to keep the tubes properly cleaned out. For example, the witness Malakis, who was one of the firemen on board the schooner, testified, among other things, that he was on deck at the time of the explosion in question, and examined the boiler as soon as the steam permitted

him to go near it, and found that the tube that had burst was one of the 2-inch tubes near the bottom. He also testified that they tried to clean that tube about four days before the explosion, at the dry-dock of Boole & Sons' shipyard in Oakland, Cal., and gave testimony tending to show that the tube was blocked with rust or dirt and was not then in a safe condition.

Under the well-established rule prevailing here, it is apparent that upon such evidence as is presented by the record we would not be justified in interfering with the conclusion reached by the trial court.

The cases of The Oscoda (D. C.) 66 Fed. 347, and The Albion (D. C.) 123 Fed. 189, do not at, all support the contention of the appellant that the libel was insufficient in failing to specify the particulars in which the boilers were alleged to be in "an unsafe, dangerous, and defective condition." The allegation in that behalf was sufficient. Admiralty courts do not encourage either technicality or prolixity in pleading.

The record contains no evidence to support the plea of laches set up in the answer, and in the opinion of the trial court it is stated that that defense was not referred to by the claimant's counsel in argument.

The judgment is affirmed.